**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTINA RIPKA on behalf of C.R.,** | : | **CIVIL ACTION NO. 3:12-CV-2047** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN, ACTING** | : | |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY ADMINISTRATION,**[1] | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM

The above-captioned action seeks review of the Commissioner of Social

Security's ("Commissioner") decision denying plaintiff Christina Ripka's ("Ripka")

claim for supplemental security income on behalf of her minor son, C.R.  Presently

before the court is Ripka's appeal from an administrative law judge's ("ALJ")

decision upholding the denial of social security benefits.  (Doc. 1).  For the reasons

that follow, the court will deny the appeal and affirm the ALJ's decision.

---

[1] Michael J. Astrue was the Commissioner of Social Security when the instant
action was filed against him in his official capacity.  Astrue subsequently vacated
his position, and Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  See Official Social Security Website, http://
www.socialsecurity.gov/pressoffice/factsheets/colvin.htm (last accessed March 19,
2014).  Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is
substituted for Michael J. Astrue as the defendant in this action.  FED. R. CIV. P.
25(d) ("An action does not abate when a public officer who is a party in an official
capacity dies, resigns, or otherwise ceases to hold office while the action is pending.
The officer's successor is automatically substituted as a party.").

## I.   **Factual Background and Procedural History**

Ripka's son, C.R., was born on March 13, 2002, and he was 7 years old and in the second grade on the application date for disability benefits.[2]  (Doc. 8-2 at 24).[3] He lives with his mother, his mother's boyfriend, his grandparents, and his older brother.  (Id. at 31).

On April 14, 2009, Ripka protectively[4] filed an initial application for supplemental security income[5] on behalf of C.R. for disability since November 24, 2008.  (Id. at 21).  The Commissioner denied the initial application for social security benefits on July 2, 2009.  (Id.)  Ripka subsequently filed a written request for a hearing.  (Id.)  On September 8, 2010, Ripka appeared and testified on behalf of C.R. before an ALJ at a hearing held in Scranton, Pennsylvania.  (Id.)

Ripka alleges that C.R. suffers from the following disabilities: attention deficit hyperactivity disorder ("ADHD"), attention deficit disorder ("ADD"), oppositional

---

[2] At all times relevant to this matter, C.R. was considered a "school age child."  (Doc. 8-2 at 24); see 20 C.F.R. § 416.926a(g)(2)(iv).

[3] Citations to the administrative record (Doc. 8) reflect the docket number followed by the specific Bates-stamped page number on the bottom right-hand corner of each page of the record.

[4] A protective filing typically occurs when an individual initially contacts the Social Security Administration to file a claim for benefits and requests an expedited filing date.  Simply stated, it allows an individual to have an application date based upon the date of his or her first contact with the Administration.

[5] Supplemental security income is a federal income supplement program funded by general tax revenues, not social security taxes.  See 42 U.S.C. § 1381.  It is designed to help the aged, blind, or disabled individuals who have little or no income.  See id. § 1381a.

defiant disorder ("ODD"), bipolar disorder, and anxiety disorder.  (Doc. 8-6 at 131).

At the hearing, Ripka testified that C.R. was just starting third grade and has been

struggling with his focus and concentration in school since first grade.  (Doc. 8-2 at

45).  As a result, C.R. takes medication in the morning and afternoon to control his

symptoms, and a behavioral therapist, Victoria Cruse Motter, M. Ed., from

Behavioral Health Rehabilitation Services ("BHRS") comes to his home eight hours

a month.  (Id. at 43-44, 74).  Ripka also stated that a Therapeutic Support Staff

("TSS") assistant stays with C.R. in the classroom until lunchtime to help him

maintain focus and be non-disruptive.  (Id. at 43-46).  According to Ripka, C.R.'s

teacher also uses a weighted cushion across his lap to discourage his disruptive

behavior.  (Id. at 50-52, 68-70).  After lunch, however, C.R. frequently gets sent to the

principal's office or loses his recess.  (Id. at 47).  Nevertheless, Ripka reported that

the school has never called her to come and pick up C.R., and that she did not

receive or keep any notes from the school about C.R.'s disciplinary record.  (Id. at

47-50, 52).

Ripka further testified that C.R. generally receives satisfactory grades and

has not received any negative grades.  (Id. at 55).  C.R. does not have an

individualized education plan ("IEP") or take special classes, nor has he ever been

held back in school.  (Id. at 44, 46, 70).  After second grade, upon his TSS's

recommendation, C.R. attended a summer camp for kids with autism and other

special needs.  (Id. at 53-54, 60).  Bonnie L. Whipple, Ph.D., a psychologist who

evaluates C.R. on behalf of BHRS, suggested that C.R. has pervasive developmental disorder and his symptoms may place him on the autism spectrum.  (Id. at 64-65).

Ripka testified that C.R. takes care of himself at home by brushing his teeth, dressing himself, and being on time for school.  (Id. at 56).  However, she stated that she has to encourage him to go outside and play with the dog or other children.  (Id. at 59).  Ripka also reported that C.R.'s symptoms are getting worse as he gets older. (Id. at 63).  For example, C.R. has become particular about the arrangement of his belongings and does not allow other people to touch them.  (Id. at 63-64).  He will throw away a bag of chips when anyone else places their hand inside and insists on his own separate box of cereal.  (Id.)  In the classroom, C.R. cannot start an activity and move on to the next assignment without finishing the previous one.  (Id. at 67).

On October 21, 2010, the ALJ issued a decision denying C.R.'s claim for social security benefits.  (See id. at 18-37).  Ripka appealed the ALJ's decision to the Appeals Counsel on November 4, 2010, (see id. at 16-17), and the Appeals Counsel denied the appeal on August 10, 2012.  (See id. at 1-6).

On October 11, 2012, Ripka, through counsel, filed a complaint in the instant action to appeal the final administrative decision denying her son's application for

social security benefits pursuant to 42 U.S.C. §1383(c)(3).[6]  (Doc. 1).  On

December 18, 2012, the Commissioner filed an answer (Doc. 7) to Ripka's complaint

and also provided the administrative record for the court's review.  (Doc. 8).  Upon

further briefing by the parties, the instant action is ripe for disposition.  (See Docs.

11, 12, 15).

## II.    <u>Standard of Review</u>

In reviewing a social security appeal, the court may conduct a plenary review

of all legal issues decided by the Commissioner.  See Poulos v. Comm'r of Soc. Sec.,

474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d

429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  The

court's review of findings of fact pursuant to 42 U.S.C. § 405(g), however, is limited

to determining whether the findings are supported by "substantial evidence."

42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008);

Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Brown v. Bowen, 845 F.2d 1211, 1213

---

[6] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. §1383(c)(3).  "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business."  Id. § 405(g).  Under the Local Rules for the U.S. District Court for the Middle District of Pennsylvania, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

(3d Cir. 1988).  Factual findings which are supported by substantial evidence must be upheld.  42 U.S.C. § 405(g); <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.").

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Pierce v. Underwood</u>, 487 U.S. 552, 564-65 (1988) (quoting <u>Consol. Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Johnson</u>, 529 F.3d at 200; <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).  The Third Circuit has described substantial evidence as more than a mere scintilla, but substantial evidence may be less than a preponderance of the evidence.  <u>Brown</u>, 845 F.2d at 1213.  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  <u>Consolo v. Fed. Mar. Comm'n</u>, 383 U.S. 607, 620 (1966).

6

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  The ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000); Cotter, 642 F.2d at 706-707.  Therefore, the court must scrutinize the record as a whole on appeal.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**III.**   **Sequential Evaluation Process**

To receive disability benefits, a plaintiff under the age of 18 must demonstrate that he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

An ALJ utilizes a three-step sequential evaluation process in assessing a minor plaintiff's claim for supplemental security income.  20 C.F.R. § 416.924.  This process requires the ALJ to consider, in sequence, whether a plaintiff (1) is

engaging in "substantial gainful activity,"[7] (2) has an impairment, or combination of impairments, that is "severe,"[8] and (3) has an impairment, or combination of impairments, that meets, medically equals, or functionally equals the requirements of a "listed impairment."[9]  Id. § 416.924(a).

To determine whether an impairment functionally equals a listed impairment, the ALJ considers how the plaintiff functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being.  Id. § 416.926a(b)(1).  An impairment

---

[7] "Substantial gainful activity" is work that "involves doing significant physical or mental activities" and is done "for pay or profit."  20 C.F.R. § 416.972.  If the plaintiff is engaging in "substantial gainful activity," the plaintiff is not disabled and the court need not proceed further with the sequential evaluation.  Id. §§ 416.924(a); 416.971.

[8] For a plaintiff under the age of 18, a "severe" impairment is more than a slight abnormality or combination of slight abnormalities that cause more than minimal functional limitations.  20 C.F.R. § 416.924(c).  If the plaintiff does not have any severe impairment, or a combination of impairments which is severe, the plaintiff is not disabled and the sequential evaluation ends at this step.  Id. § 416.924(a).  Regardless of the ALJ's conclusion, all medically determinable impairments, whether severe or non-severe, are considered in the last step of the sequential evaluation process.  Id. §§ 416.923, 416.924a(b)(4).

[9] A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work."  Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1.  If the plaintiff has an impairment, or combination of impairments, that meets or medically or functionally equals a listed impairment, and it has lasted or is expected to last for a continuous period of at least 12 months, the plaintiff is disabled.  20 C.F.R. § 416.924(d).  Otherwise, the plaintiff is not disabled under the Social Security Act.  Id.

functionally equals a listed impairment when the plaintiff has "marked" limitations in two of the six domains or an "extreme" limitation in one domain.  Id. § 416.926a(d).

When the ALJ considers whether the plaintiff has marked or extreme limitations in any domain, the ALJ examines the evidence in the record on how the plaintiff's impairments limit his or her functioning and "compare[s] [the plaintiff's] functioning to the typical functioning of children [his or her] age who do not have impairments."  Id. § 416.926a(f)(1).  A "marked" limitation means "a limitation that is more than moderate but less than extreme" and "seriously" interferes with the plaintiff's ability to independently initiate, sustain, or complete activities.  Id. § 416.926a(e)(2)(i) (internal quotations omitted).  An "extreme" limitation is "more than marked" and "very seriously" interferes with the plaintiff's ability to independently initiate, sustain, or complete activities.  Id. § 416.926a(e)(3)(i).

In the case *sub judice*, the ALJ applied the sequential evaluation process and, at step one, concluded that C.R. has not engaged in substantial gainful activity since the application date for disability benefits.  (Doc. 8-2 at 24).  At step two, the ALJ found that C.R. has the severe impairment of ADHD.  (Id.)  At step three, the ALJ held that C.R.'s impairment does not meet or medically equal listing 112.00 for psychological disorders.  (Id.)  The ALJ also established that C.R. does not functionally equal any listed impairment.  (Id.)  Specifically, the ALJ found that C.R. only has marked limitations in attending and completing tasks.  (Id. at 29-30).  In the other domains, the ALJ determined that C.R. has less than marked

limitations in acquiring and using information and interacting and relating with others, and no limitations in moving about and manipulating objects, caring for himself, and health and physical well-being.  (Id. at 24-33).  As a result of the three-step sequential evaluation process, the ALJ concluded that C.R. has not been disabled since April 14, 2009[10] under the Social Security Act.  (Id. at 33).

## IV.   __Discussion__

In the instant action, Ripka requests that the court reverse or remand her son's disability claim to the ALJ for further proceedings for several reasons.  First, the ALJ erroneously concluded that C.R.'s ADHD does not functionally equal any listed impairment because C.R. has at least marked limitations in interacting and relating with others.  (Doc. 11 at 4-10).  Second, the ALJ improperly discounted the medical opinions of C.R.'s treating psychologist, Dr. Whipple, including her GAF scores.  (Id. at 10-12).  Third, the ALJ failed to make any credibility finding regarding Ripka's testimony and thereby implicitly rejected her testimony.  (Id. at 12-13).  Finally, the court should remand the instant case to the ALJ for consideration of new and material evidence.  (Id. at 13-16).  The court will address each argument *seriatim*.

---

[10] For supplemental security income cases under Title XVI of the Social Security Act, the alleged disability onset date is the application date because Title XVI payments are made beginning only in the month following the application date without retroactivity.  20 C.F.R. § 416.335.

### A.    Limitations in Interacting and Relating With Others

At step three of the sequential evaluation process, the ALJ must determine whether a plaintiff's impairment or combination of impairments meets, medically equals, or functionally equals any listed impairment on the Commissioner's Listings of Impairments. 20 C.F.R. § 416.924(a); <u>see</u> 20 C.F.R. pt. 404, subpt. P, app. 1. Ripka contends that, contrary to the ALJ's finding, C.R.'s ADHD functionally equals listing 112.00 for psychological disorders. (Doc. 11 at 5-6).

In his administrative decision, the ALJ evaluated C.R.'s functioning in the six relevant domains, assessing whether C.R. has marked limitations in two domains or extreme limitations in one domain. (Doc. 8-2 at 24-33). The ALJ determined that C.R. only has marked limitations in attending and completing tasks and less than marked or no limitations in the other five domains. (<u>Id.</u>) The ALJ explicitly relied on evidence from medical sources as well as information from other sources, including school teachers, family members, and statements from C.R. (<u>Id.</u> at 24). The court notes that the administrative record in this case is 438 pages in length, primarily consisting of medical records. (<u>See</u> Doc. 8). The ALJ did an adequate job of reviewing C.R.'s medical history and personal background in his decision.

Ripka argues that the ALJ correctly found that C.R. has marked limitations in attending and completing tasks, but the ALJ erred by finding less than marked limitations in interacting and relating with others. (Doc. 11 at 5). To evaluate a plaintiff's ability to interact and relate with others, the ALJ should compare the plaintiff's functioning to the typical functioning of children his or her age who do

not have an impairment.  20 C.F.R. § 416.926a(f)(1).  A school-aged child without an impairment should be able to develop more lasting friendships, understand how to work in groups, have an increasing ability to understand another's point of view, and be able to talk to people of all ages.  Id. § 416.926a(i)(2)(iv).  This domain further requires an ability to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.  Id. § 416.926a(i).  Interacting and relating with others relates to all aspects of social interaction at home, at school, and in the community.  Id.

In assessing C.R.'s functioning, the ALJ first referred to Dr. Petroski's psychological evaluation, which was the result of a request from C.R.'s first grade teacher, Ms. Lucas, for full-time TSS services.  (Doc. 8-2 at 26).  Dr. Petroski noted reports from Ms. Lucas, the TSS, and Ripka that C.R. has a history of being disruptive and oppositional at home and in school.  (Id.)  However, C.R.'s aunt who accompanied him to the evaluation stated that C.R. is a normal kid at home and gets along with his many friends.  (Id.)  Next, the ALJ cited the non-examining, consultative opinion of Frank Mrykalo, EDD, that C.R. has less than marked limitations in interacting and relating with others.  (Id. at 27).  Dr. Mrykalo noted that Ms. Lucas reported problems in this domain in her Teacher Questionnaire, but also indicated that the TSS's presence helps manage C.R.'s behavior in the classroom.  (See Doc. 8-7 at 244-49).  At the beginning of second grade, the ALJ noticed that C.R. began meeting with Craig S. Feaster, M.D., a child and adolescent

12

psychiatrist, every four weeks for medication management and that C.R.'s behavior improved with the psychotropic medication. (Doc. 8-2 at 27-28). Ripka reported to Dr. Feaster that C.R. is more focused and less hyperactive, and that he can sit and do homework after school and stay out until 7 pm playing with friends. (Id. at 27). Finally, the ALJ stated that, while reassessing C.R.'s need for behavioral therapy in March 2010, Dr. Whipple noted past history of peer relationship issues and conflicts with teachers, but C.R. reported that he has friends "just the whole school." (Id. at 27, 31; Doc. 8-7 at 271). For all of these reasons, the ALJ found that C.R. has less than marked limitations in interacting and relating with others.

Ripka asserts that the ALJ's decision was not based on substantial evidence for three main reasons. First, Ripka argues that the ALJ improperly relied on C.R.'s statement to Dr. Whipple when the evidence in her psychological evaluation shows that his statement was a false exaggeration. (Doc. 11 at 6-7). However, there is no indication that the ALJ relied solely on C.R.'s statement to Dr. Whipple. Rather, when viewed as a whole, the ALJ properly reviewed the entire record and discussed C.R.'s behavior since first grade.

Ripka next emphasizes that the ALJ failed to consider Ms. Lucas's Teacher Questionnaire dated May 24, 2009, in which she rated C.R. as having "obvious" to "very serious" problems in, *inter alia*, playing cooperatively with other children, obeying adults in authority, seeking attention appropriately, and making and keeping friends. (Doc. 11 at 7). As previously noted, the ALJ clearly considered Ms. Lucas's report in conjunction with Dr. Petroski's psychological evaluation when she

13

requested a full-time TSS for C.R.  (Doc. 8-2 at 26).  The ALJ also referred to Dr.

Myakolo's findings which includes references to Ms. Lucas's report.  (Id. at 27; see

Doc. 8-7 at 244-49).  There is no evidence in the record to conclude that the ALJ in

fact rejected Ms. Lucas's report.

Similarly, Ripka argues that the ALJ did not consider the Enhanced Mental

Health Treatment Plan dated March 25, 2010 by C.R.'s behavioral therapist, Ms.

Motter.  (Doc. 11 at 8).  The treatment plan, in relevant part, discussed the school's

reports about C.R.'s disciplinary problems and difficulty getting along with his

peers.  (Id.)  Contrary to Ripka's assertions, the ALJ specifically addressed the

treatment plan and noted that Ms. Motter set up the treatment plan based on Dr.

Whipple's findings.  (Doc. 8-2 at 28).  However, the ALJ assigned little weight to Dr.

Whipple's assessment because her findings conflicted with the other evidence of

record showing C.R.'s improvement with medication.  (Id. at 27-28).

The court reiterates that the standard of review is not whether the evidence

of record supports Ripka's position, but whether substantial evidence supports the

ALJ's finding.  Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989).  In the instant matter,

the ALJ appropriately weighed all the relevant evidence of record.  (See Doc. 8-2 at

24-33).  The ALJ clearly reasoned that C.R.'s behavior improved at home and at

school by the end of second grade as a result of Dr. Feaster's regular treatment and

medication management.  (Id. at 27-28).  Accordingly, the ALJ accorded greater

weight to the medical records and opinions of Dr. Feaster.  (Id. at 28).  Upon review

of the record, the court finds that substantial evidence supports the ALJ's finding

that C.R. has less than marked limitations in interacting and relating with others

and therefore his psychological impairment is not functionally equal to any listed

impairment.

### B.      Weight of BHRS Psychologist's Opinion

Ripka next argues that the ALJ improperly rejected the medical opinions of

Dr. Whipple as C.R.'s treating psychologist.  (Doc. 11 at 10-12).  In evaluating Dr.

Whipple's opinions, the ALJ specifically focused on her psychological evaluation

from March 25, 2010, which was conducted for the purpose of determining C.R.'s

eligibility to continue behavioral therapy with Ms. Motter.  (Doc. 8-2 at 27-28).  Dr.

Whipple opined that C.R. has psychosocial stressors related to his primary support

group, namely his parents' separation, his father's lack of contact, and his mother's

recent surgery, unemployment, and parenting skills.  (Id. at 27).  Dr. Whipple also

noted that C.R. has peer relationship issues and conflicts with teachers in the classroom.  (Id.)  As a result, Dr. Whipple assigned C.R. a GAF[11] score of 45 and diagnosed him with pervasive developmental disorder, disruptive behavior disorder, and ADHD.  (Id.)

The ALJ assigned little weight to Dr. Whipple's opinions because the ALJ determined that "Dr. Whipple is not a treating source" and her opinions are in "direct conflict with the other evidence of record that shows the claimant's behavior has improved with medication."  (Id. at 27-28).  With respect to the GAF score, the ALJ noted that Dr. Whipple did not rely on any diagnostic tests in assessing C.R.'s score and the score is "inconsistent with [Dr. Whipple's] own mental status examination findings, as well as, with the records from treating and attending medical sources."  (Id. at 28).  Overall, "[t]he record clearly contradicts the conclusions and the opinions expressed by Dr. Whipple."  (Id.)

---

[11] The GAF score allows a medical source to indicate his or her judgment of a plaintiff's overall psychological, social, and occupational functioning in order to assess the plaintiff's mental impairments.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 3-32 (4th ed. 1994).  A GAF score is set within a particular range if either the severity of symptoms or the level of functioning falls with that range.  Id.  A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning.  Id.  A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning.  Id.  A GAF score of 61-70 represents some mild symptoms or difficulty in social, occupational, or school functioning, but generally functioning well with some meaningful interpersonal relationships.  Id.  A GAF score of 71-80 indicates transient and expected reactions to psychosocial stressors and no more than slight impairment in social, occupational, or school functioning.  Id.

Ripka contends that the ALJ improperly discounted Dr. Whipple's opinions for two reasons. First, the ALJ erred in finding that Dr. Whipple is not a treating source. (Doc. 11 at 11). Second, the ALJ rejected Dr. Whipple's March 2010 GAF score for the wrong reasons when he ignored Dr. Whipple's two previous identical GAF scores as well as the same GAF score by Dr. Feaster. (Id. at 11-12).

To determine the weight of medical evidence, an ALJ must first assess whether the evidence is from a treating, non-treating examining, or non-examining source. See 20 C.F.R. § 416.902. A treating source is a "physician, psychologist, or other acceptable medical source" who provides the plaintiff with "medical treatment or evaluation." Id. A treating source also has an "ongoing treatment relationship" with the plaintiff and sees him or her "with a frequency consistent with accepted medical practice for the type of treatment . . . required for" the plaintiff's conditions. Id. A medical source is not a treating source if the treatment is based "solely on [the plaintiff's] need to obtain a report in support of [his or her] claim for disability," and not on a need for treatment. Id.

The Third Circuit Court of Appeals has set forth the standard for evaluating the opinion of a treating medical source in Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000). The Third Circuit stated, in relevant part, as follows:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" . . . . [T]he ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical

reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.

Id. at 317-18 (internal citations omitted).  The opinions of non-treating, examining sources, however, are not entitled to special treatment.  20 C.F.R. § 416.927(c).  An ALJ also need not defer to a medical source's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner.  Id. § 416.927(d).

Substantial evidence supports the ALJ's determination that Dr. Whipple is not a treating source.  The ALJ specifically noted that "the purpose of the [psychological evaluation] was to determine [C.R.'s] continued eligibility to receive behavioral health rehabilitation services."  (Doc. 8-2 at 27).  Based on Dr. Whipple's opinion that C.R. still needed therapy from BHRS, his assigned therapist, Ms. Motter, set up a Mental Health Services Treatment Plan for him.  (Id. at 28).  Dr. Whipple also conducted another psychological evaluation on August 14, 2010 in order to prescribe TSS services for C.R.'s school.  (Id.)  There is no indication in the record that Dr. Whipple personally provided C.R. with any individualized treatment for his psychological disorders.

The ALJ further emphasized that Dr. Whipple "did not rely on objective long-term observations" in rendering her opinions.  (Id. at 27-28).  The court notes that the ALJ discounted the opinion of Richard Petroski, Ph.D., for similar reasons. (See id. at 26).  On March 23, 2009, Dr. Petroski conducted a psychological evaluation to determine whether C.R. needed a full-time TSS assistant in the

18

classroom.  (Id.)  Dr. Petroski considered the reports of C.R.'s first-grade teacher
and his aunt who accompanied him to the evaluation.  (Id.)  Like Dr. Whipple, Dr.
Petroski referred to inconsistent parenting at home and diagnosed C.R. with
disruptive behavior disorder, ADHD, and relational problems.  (Id.)  Dr. Petroski
also gave C.R. a GAF score of 48.  (Id.)  The ALJ determined that Dr. Petroski is not
a treating source because he relied "solely and exclusively on one observation made
on the day of the consultative examination and not upon objective long-term
observations and experiences."  (Id.)  The record indicates that both Dr. Petroski
and Dr. Whipple reviewed parental and school reports and examined C.R.
approximately twice a year for the sole purpose of assessing his continued need for
BHRS and TSS services.  Therefore, the court will uphold the ALJ's finding that
neither Dr. Petroski nor Dr. Whipple are treating sources.

 With respect to the GAF scores, the ALJ properly explained his reasoning for
discounting Dr. Petroski and Dr. Whipple's scores.  The ALJ held that both Dr.
Petroski and Dr. Whipple's GAF scores are inconsistent with the findings in their
psychological evaluation as well as the objective medical evidence from treating and
attending medical sources.  (Id. at 26, 28).  Pursuant to social security regulations, a
medical source opinion is "inconsistent when it conflicts with other evidence,
contains an internal conflict, is ambiguous, or when the medical evidence does not
appear to be based on medically acceptable clinical or laboratory diagnostic
techniques."  20 C.F.R. § 416.920b.  The ALJ explained that GAF scores are
exclusively the personal assessment of the examiner and are not based on any

empirical standard.  (Doc. 8-2 at 26).  The ALJ further noted that neither Dr.

Petroski nor Dr. Whipple relied on specific diagnostic test results, such as IQ tests,

or specific clinical observations to assess C.R.'s global functioning.  (<u>Id.</u> at 26, 28).

Hence, the ALJ was justified in assigning little weight to Dr. Petroski and Dr.

Whipple's GAF scores.[12]

The court concludes that the ALJ adequately evaluated all of the medical

opinions in the record.  The ALJ complied with the applicable standards in <u>Morales</u>

by assigning greater weight to the opinions of C.R.'s treating and attending medical

sources.  Because the ALJ determined that the record evidence does not support

the opinions of Drs. Petroski and Whipple based on their limited psychological

examinations, the ALJ properly accorded them little weight in accordance with the

social security regulations.

### C.    Credibility of Ripka's Testimony

Ripka also argues that the ALJ erred by failing to evaluate the credibility of

her testimony.  (Doc. 11 at 12-13).  Specifically, the ALJ improperly determined that

C.R. has less than marked restrictions in interacting and relating with others

without providing any reason for discounting Ripka's contrary testimony.  (<u>Id.</u>)

---

[12] It is irrelevant that the ALJ did not specifically reject Dr. Whipple's identical GAF scores from two assessments in 2009 or explain the weight attributed to Dr. Feaster's opinions, including a GAF score of 45.  (<u>See</u> Doc. 11 at 11-12).  The ALJ's reasoning for discounting the GAF scores remains applicable.  By definition, a GAF score is not based on clinical or laboratory diagnostic techniques; it is merely a medical source's personal assessment of the plaintiff's global functioning at that time.  (<u>See</u> Doc. 8-2 at 26).  For example, Dr. Petroski assigned C.R. a GAF score of 48 in March 2009 and a GAF score of 80 only six weeks later.  (<u>Id.</u> at 26-27).

The ALJ must make a determination of disability based on all of the relevant evidence of record, including a plaintiff's subjective statements and statements from his or her parents or other caregivers. Burnett, 220 F.3d at 122; see 20 C.F.R. § 416.924a(a). Accordingly, the ALJ must evaluate the plaintiff's credibility regarding his or her symptoms. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983); Mason, 994 F.2d at 1067-68 (noting that the ALJ must give subjective complaints "serious consideration" even when those assertions are not confirmed fully by objective medical evidence). The ALJ's findings on a plaintiff's credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Farr v. Colvin, No. 3:12-CV-1414, 2014 WL 47379, at *10 (M.D. Pa. Jan. 6, 2014); 20 C.F.R. § 416.929(c)(3).

"An ALJ must give great weight to a claimant's subjective testimony . . . when this testimony is supported by competent medical evidence." Schaudeck, 181 F.3d at 433; Mason, 994 F.2d at 1067-68. However, the ALJ "has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible." Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). The ALJ may reject the plaintiff's statements regarding his or her symptoms "if [the ALJ] affirmatively addresses the claim in his decision, specifies the reason for rejecting it, and has support for his conclusion in the record." Hirschfeld v. Apfel, 159 F. Supp. 2d 802, 811 (E.D. Pa. 2001); see also Fargnoli, 247 F.3d at 43; Schaudeck, 181 F.3d at 433; SSR 96–7p, 61 Fed. Reg. 34483 (July 2, 1996) ("When

evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.").

A review of the ALJ's decision in this case shows that the ALJ complied with his obligation to consider C.R.'s subjective statements and statements from his caregivers under the applicable social security regulations. The ALJ first noted that he evaluated all relevant evidence of record, including objective medical evidence, information from other sources, including school teachers, family members, or friends, and statements by C.R. and his mother or other caregivers. (Doc. 8-2 at 26). Moreover, the ALJ recognized that, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." (Id. at 25).

The ALJ discussed all of the relevant evidence in this case, and he included Ripka's reports to the medical sources in his analysis of the evidence. (Id. at 25-28). When discussing the three contested functional domains, the ALJ also referred to Ripka's testimony in the hearing at least four times. (Id. at 29-31 (noting Ripka's testimony regarding C.R.'s family life, his lack of an IEP, and his history of not completing assignments in school)). The ALJ simply determined that, when considered as a whole (including Ripka's testimony), the evidence supports a finding that C.R. has less than marked limitations in interacting and relating with

others.  See Jonson v. Colvin, No. 12CV1742, 2013 WL 1314781, at *6-7 (W.D. Pa. Mar. 28, 2013) (holding that the ALJ did not discount mother's testimony for lack of credibility when the ALJ's decision discussed her statements regarding plaintiff's symptoms, but stated "the evidence does not persuade the [ALJ] that the claimant's medically determinable impairments rise to the level of disability").  As a result, the court concludes that the ALJ was not required to make any additional or explicit finding regarding Ripka's credibility.

Our review of the administrative record as a whole reveals that substantial evidence supports the ALJ's decision at step three of the sequential evaluation process.  Accordingly, the court will deny the appeal and uphold the ALJ's administrative decision.

### D.    Remand for Consideration of New Evidence

Lastly, Ripka moves the court to remand the instant case to the ALJ pursuant to sentence six of 42 U.S.C § 405(g) for consideration of new evidence. (Doc. 11 at 13-14).  The new evidence consists of a psychological evaluation by Robert J. Meacham, M.S. dated December 21, 2011, who noted C.R.'s sensory sensitivity and behavior reflecting symptoms along the autism spectrum and diagnosed C.R. with Asperger's syndrome,[13] and another psychological evaluation by Dr. Whipple dated April 16, 2012, who diagnosed C.R. with Asperger's syndrome, ADHD, and anxiety disorder.  (Id. at 14).

---

[13] Asperger's syndrome is a type of high-functioning autism disorder on the autism spectrum.

Under sentence six of 42 U.S.C § 405(g), "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592-93 (3d Cir. 2001).  Accordingly, the court considers three factors in its decision to remand a matter to an ALJ for consideration of new evidence.  See Szubak v. Sec. of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984).  First, the evidence must be "new" and "not merely cumulative of what is already in the record."  Id.  Second, the evidence must be "material," meaning "relevant and probative," and there must exist "a reasonable probability that the new evidence would have changed the outcome" of the ALJ's administrative decision.  Id.  A "reasonable probability" exists when the new evidence is "sufficient to undermine confidence in the prior decision."  Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985).  Third, the plaintiff must show good cause for not previously incorporating the evidence into the administrative record.  Szubak, 745 F.2d at 833; see also Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 472 (3d Cir. 2005) (citing Newhouse, 753 F.2d at 287).

First, the court finds that the psychological evaluations are new because they did not exist until after the ALJ's administrative decision and before the Appeals Council's denial of review.  (See Doc. 11 at 14).  The evaluations are also not cumulative because they include additional medical evidence and diagnoses not in the existing administrative record.

24

However, the psychological evaluations are not material because the ALJ already considered Ripka's testimony regarding C.R.'s symptoms and attendance at a summer camp for autism and other special needs. (Doc. 8-2 at 53-54, 60). Moreover, the ALJ expressly discussed the objective medical evidence from Dr. Whipple that C.R. exhibits symptoms along the autism spectrum and suffers from pervasive development disorder. (Id. at 27, 64-65). The ALJ assigned little weight to Dr. Whipple's opinions in his administrative decision because her findings conflicted with the other evidence of record showing C.R.'s improvement with medication. (Id. at 27-28). As a result, the court concludes that there is not a reasonable probability that the new evidence would alter the ALJ's decision. Cf. Newhouse, 753 F.2d at 287 (finding that new objective medical evidence may change the outcome when ALJ made his decision upon the lack of such evidence).

The Commissioner also argues that the evidence does not relate to the time period of April 14, 2009 to October 21, 2010, which was the basis of the ALJ's administrative decision. (Doc. 12 at 25). The court agrees. Evidence is only material when it "relate[s] to the time period for which benefits were denied" and does not "concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Szubak, 745 F.2d at 833. Here, Ripka seeks to introduce evidence of C.R.'s psychological impairments in fourth grade. Moreover, the psychological evaluations suggest worsening difficulties with the same impairments presented to the ALJ. See Parks ex rel. K.D. v. Astrue, No. 08-4641, 2010 WL 1047903, at *3 (E.D. Pa. Mar. 18, 2010) (rejecting plaintiff's new evidence as immaterial because it consists of recent evaluations

about plaintiff's condition after the ALJ's decision, revealing "a continuing

downward spiral in [plaintiff's] mental health and in his behavioral well being")

(internal citation omitted).  Importantly, the court emphasizes that nothing set forth

herein would preclude application for social security benefits based upon a later-

acquired disability or the marked deterioration of C.R.'s condition.

For the reasons set forth above, the court holds that remand for

consideration of new evidence is not warranted in this case.

## V.    Conclusion

For the foregoing reasons, the court will deny Ripka's appeal on behalf of

C.R. and affirm the ALJ's administrative decision upholding the Commissioner's

denial of social security benefits.

An appropriate order will issue.


                                      /S/ CHRISTOPHER C. CONNER
                                      Christopher C. Conner, Chief Judge
                                      United States District Court
                                      Middle District of Pennsylvania


Dated:        March 21, 2014